# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AT SAN ANTONIO

| | | |
|---|---|---|
| Jerri L. Moulder, P.C. | ) | |
| And | ) | |
| Jerri L. Moulder, | ) | |
| individually and on behalf of | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs | ) | Demand for Jury Trial |
| | ) | |
| v. | ) | Case No. 5:24-cv-292 |
| | ) | |
| Keller Williams Realty, Inc., | ) | COMPLAINT – CLASS ACTION |
| Serve Registered Agent | ) | |
| Cogency Global Inc. | ) | |
| 1601 Elm Street, Suite 4360 | ) | |
| Dallas, TX 75201 | ) | |
| | ) | |
| Defendant | ) | |

## CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL

Jerri. L. Moulder, P.C. and Jerri L. Moulder ("Plaintiffs"), individually and on behalf of all other persons similarly situated, for their complaint for damages against defendant Keller Williams Realty, Inc. ("Keller Williams" or "Defendant").

## NATURE OF ACTION

1.      This is a class action claim arising from a breach of contract by Keller Williams, unjust enrichment to Keller Williams relating to payments owed under the Keller Williams Profit Sharing Program, declaratory judgment seeking a declaration of this Court that any changes reducing Profit Sharing Program distributions earned by and owed to vested Profit Sharing Program participants cannot be made

1

retroactive, and permanent injunctive relief prohibiting Keller Williams from reducing the Profit Sharing Program distributions to vested plan participants.

2.     The Profit Sharing Program was developed to be a way to reward those associates who helped build the company.

3.     Keller Williams used the Profit Sharing Program as a way to encourage the recruitment of top associates to Keller Williams by Keller Williams associates.

4.     The Profit Sharing Program was designed to be an open-ended profit sharing program that allowed Keller Williams associates, investors, Team Leaders, Market Center staff, Keller Williams staff, and Regional Directors to participate in profits they helped to create without assuming any financial risk.

5.     Eligibility to participate in the Profit Sharing Program was determined by contributing to the growth of Keller Williams by recruiting new sales associates to any Market Center located anywhere in the United States or Canada.

6.     Funds in the Profit Sharing Program were distributed in a multi-tiered format based upon the sponsorship of one associate or employee by another associate or employee.

7.     Keller Williams associates participated in the Profit Sharing Program by recruiting other associates who contribute to the profitability of a Keller Williams Market Center.

8.     Persons recruited into Keller Williams were required to name a sponsor that recruited them for purposes of calculating Profit Sharing Program distributions.

Associates who were recruited to Keller Williams by more than one person were required to name one person as their sponsor.

9.    Persons recruited into Keller Williams by a named sponsor were designated or identified as the "down line" of the sponsor.

10.    New associates with Keller Williams were instructed that choosing a sponsor was a very important decision and that the person selected would remain their sponsor for life.

11.    New associates with Keller Williams were further instructed that their sponsor should be the person most instrumental in bringing them into serious discussions with Keller Williams.

12.    Individuals in leadership positions with Keller Williams were instructed that they were to ensure new associates name the person who actually referred them to Keller Williams as their sponsor.

13.    New associates with Keller Williams were instructed that they should consider how they stacked the Keller Williams Profit Share and Growth Share tree and that they should do that in such a way that maximizes the profit share and growth share that they would receive.

14.    Under the Profit Sharing Program there were seven levels of sponsorship.

15.    A Level One sponsor was the person who directly recruited an associate to become affiliated with a Keller Williams Market Center.

16.     A Level Two sponsor was the person who directly recruited a Keller Williams associate's Level One sponsor.

17.     A Level Three sponsor was the person who directly recruited a Keller Williams associate's Level Two sponsor.

18.     A Level Four sponsor was the person who directly recruited a Keller Williams associate's Level Three sponsor.

19.     A Level Five sponsor was the person who directly recruited a Keller Williams associate's Level Four sponsor.

20.     A Level Six sponsor was the person who directly recruited a Keller Williams associate's Level Five sponsor.

21.     A Level Seven sponsor was the person who directly recruited a Keller Williams associate's Level Six sponsor.

22.     Sponsors of associated share in the Profit Sharing Contribution generated by an associates closed sales based upon the following schedule:

      a.  Level 1 – 50%;

      b.  Level 2 – 10%;

      c.  Level 3 – 5%;

      d.  Level 4 – 5%;

      e.  Level 5 – 7.5%;

      f.  Level 6 – 10%; and

      g.  Level 7 – 12.5%.

23.     Keller Williams associates who had an anniversary date before April 1, 2020, became **permanently vested** in the Profit Sharing Program after being associated with a Keller Williams Market Center, or combination of Market Centers, for three consecutive years. (emphasis added)

24.     After becoming vested in the Profit Sharing Program, a Keller Williams associate with an anniversary date before April 1, 2020, **was not required to continue to work as an associate with a Keller Williams Market Center to remain in the Profit Share Program**. (emphasis added)

25.     For individuals who were vested in the Profit Share Program, future payments under the Profit Share Program were payable to the estate of the vested participant or to a designated beneficiary established by either the Binding Sponsorship Agreement or by a more current Designation or Change of Beneficiary Form.

26.     According to the Keller Williams Policies & Guidelines Manual ("Policies & Guidelines Manual"), Keller Williams did not have the right to terminate the Profit Share Program.

27.     According to the Policies & Guidelines Manual, Keller Williams did not have the right to amend any aspect of the Profit Share Program method of calculating a Market Center's Profit Sharing Contribution or a recruiting sponsor's profit sharing distribution except as specifically directed by the IALC.

28.     According to the Policies & Guidelines Manual, **any termination or amendment to the Profit Share Program would be prospective only** and

would not affect a Market Center or a recruiting sponsor with respect to Profit-Sharing Contributions owed or profit sharing distributions earned prior to the effective date of the termination or amendment. (emphasis added)

29.    A report presented to the Keller Williams International Associate Leadership Council ("IALC") on August 14, 2019, by Matt Green regarding the findings of the Profit Share Task Force.

30.    Mr. Green reported that in the last year, approximately $25 million to $40 million was paid in profit sharing distributions to non-Keller Williams participants who are directly competing with Keller Williams.

31.    Mr. Green further reported that the Profit Share Task Force considered how changes in the Profit Share Program would align with the belief system and values of Keller Williams.

32.    Mr. Green stated that the Profit Share Task Force recognized that former Keller Williams associates who were competing against Keller Williams while also receiving Profit Share Program distributions both **joined Keller Williams at a time and left Keller Williams at a time when the Keller Williams policies committed to the ongoing payment of Profit Share Program distributions to those associates regardless of whether they joined another company and were competing against Keller Williams**. (emphasis added)

33.    On February 15, 2020, the Keller Williams IALC met at the Kay Bailey Hutchison Convention Center in Dallas, Texas.

34. During the February 2020, Keller Williams IALC meeting, Mr. Green presented to the IALC read a motion and rationale presented by the Profit Share Task Force for amending the Policies & Guidelines Manual section regarding vesting in the Profit Share Program.

35. Mr. Green stated that the Profit Share Task Force did not believe there should be a change in the vesting rules for those associates who had built Keller Williams to that point in time. However, the Profit Share Task Force did recommend that associates joining Keller Williams in the future should have higher standards for becoming vested in the Profit Share Program.

36. The IALC considered, and passed amendments to the Policies & Guidelines Manual section related to vesting in the following ways:

    a. The phrase "would be permanently vested in the Profit Sharing Program" for associates with an Anniversary Date prior to April 1, 2020, was replaced by the phrase "are vested in the Profit Sharing Program";

    b. The phrase "[f]or any associate that joins Keller Williams on or after April 1, 2020, and remains affiliated with Keller Williams for 7 consecutive years, they are vested" was added to the vesting section of the Policies & Procedures Manual.

    c. The accompanying NOTE to the vesting section in the Policies & Guidelines Manual providing that "At such time as an associate is vested, there will be no requirement to continue to work as an

associate with a Market Center in order to remain in the Profit Sharing Program." In place of this sentence a sentence was added to the vesting section that stated "[e]xcept as otherwise removed by virtue of other provisions in this Policies & Guidelines Manual, at such time as an associate is vested, there is no requirement to continue to remain affiliated with Keller Williams in order to remain in the Profit Sharing Program."

37. On August 16, 2023, the Keller Williams IALC met at the Austin Convention Center in Austin, Texas.

38. During the August 2023 meeting of the IALC, a motion to change the terms of the Profit Share Program was made, voted on, and approved by the IALC.

39. The changes made by the IALC in August 2023 affected vested Profit Sharing Program participants with a Keller Williams anniversary date of April 1, 2020, or earlier.

40. The IALC changed the Profit Sharing Program for three categories of vested participants with a Keller Williams anniversary date on or before April 1, 2020:

a. persons who are currently an owner, contractor, employee or affiliate of a non-Keller Williams brokerage;

b. disassociates from a Keller Williams brokerage or is no longer employed by Keller Williams and joins a non-Keller Williams

brokerage or otherwise competes with Keller Williams or its franchises; or

c. directly or indirectly attempts to induce an associate, staff member, or owner of any Keller Williams brokerage to affiliate with a non-Keller Williams brokerage.

("Effected Participants")

41. With the August 2023 changes to the Profit Sharing Program, the IALC designated Effected Participants as "Vested Competing Associates."

42. The IALC changed the terms of the Profit Sharing Program for Effected Participants and reduced the monthly Profit Sharing distribution down from 100% to 5%.

43. In an effort to force Effected Participants to return to work with Keller Williams, the IALC included a provision that Effected Participants could return to Keller Williams within six months of receiving notice that their Profit Sharing Program was to be reduced and have the distribution reinstated to 100% payment.

44. Anticipating that the changes to the Profit Sharing Program were a breach of contract of other actionable conduct, the IALC added a provision in the section regarding termination or amendment of the Profit Sharing Program that stated "Administration and Defense of the Profit Sharing Program. Any and all funds in the Profit Share program may be utilized by KWRI for administration or defense of the Profit Share program, including to cover all costs, attorneys' fees, expenses, sums of money, debts, interest, losses, damages, settlements, fines, penalties,

assessment, and judgments incurred, levied or resulting from any claims or disputes relating to the Profit Share program."

## PARTIES

45.     Plaintiff Jerri L. Moulder, P.C. is a Missouri corporation with its principal office in the State of Missouri.

46.     Plaintiff Jerri L. Moulder is a resident and citizen of the state of Kansas.

47.     Plaintiffs brings this action individually and as representatives of a class of persons with a Keller Williams Anniversary Date before April 1, 2020, and are or will be designated by Keller Williams as being a Vested Competing Associate and have, or will have, payments under the Profit Sharing Program reduced from 100% to 5%.

48.     Plaintiffs brings this action individually and as representatives of a class of similarly situated persons to recover damages for breach of contract, unjust enrichment, declaratory judgment and permanent injunctive relief against defendant Keller Williams.

49.     Specifically, Plaintiff Jerri L. Moulder was a sales associate with Keller Williams from 2002 to 2011.

50.     Plaintiff Jerri L. Moulder, P.C. and/or Jerri L. Moulder was vested in the Keller Williams Profit Sharing Program before April 1, 2020.

51.     Plaintiff Jerri L. Moulder left Keller Williams in December 2011.

52.     Both while she was a sales associate with Keller Williams and after leaving Keller Williams, Plaintiff Jerri L. Moulder successfully recruited new associates to join Keller Williams.

53.     Plaintiff Jerri L. Moulder was selected as the Permanent Sponsor of new sales associates that were recruited to Keller Williams, including sales associates that joined Keller Williams after Plaintiff Jerri L. Moulder left Keller Williams in December 2011 and was selling real estate as a competitor of Keller Williams.

54.     As a result recruiting sales associates to join Keller Williams, Plaintiff Jerri L. .Moulder and/or Jerri L. Moulder, P.C. developed a "down line" of Keller Williams sales associates from which Profit Sharing Program distributions have been paid.

55.     Plaintiff Jerri L. Moulder is now a Broker Associate with Platinum Realty.

56.     Plaintiff Jerri L. Moulder, P.C. and Jerri L. Moulder meet the definition of a Vested Competing Associate under the Keller Williams Policies & Guidelines Manual dated February 2, 2024.

57.     Plaintiff Jerri L. Moulder, P.C. and/or Jerri L. Moulder have, or will have, distributions under the Profit Sharing Program reduced from 100% to 5% unless she chooses to return to Keller Williams within six months of receiving notice that the Profit Sharing Program distribution will be reduced.

## JURISDICTION AND VENUE

58.    Plaintiff Jerri L. Moulder, P.C. is a Missouri corporation with its principal place of business in Kansas City, Missouri.  Therefore, Plaintiff Jerri L. Moulder, P.C. is a resident and citizen of the State of Missouri.

59.    Plaintiff Jerri L. Moulder is a resident and citizen of the State of Kansas.

60.    Defendant Keller Williams is a resident and citizen of the State of Texas.

61.    Keller Williams has its corporate headquarters in Austin, Texas.

62.    As Plaintiffs are residents and citizen of the State of Missouri and the State of Kansas and defendant Keller Williams is a resident and citizen of the State of Texas, complete diversity exists and this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332.

63.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because (1) Plaintiff brings this action on behalf of a class which is expected to include more than 100 persons, (2) Plaintiff and Defendant Keller Williams are citizens of different states, and (3) the aggregate amount in controversy is expected to exceed $5 million. *See* 28 U.S.C. § 1332(d). Plaintiffs are bringing a putative nationwide class that includes all persons who meet the definition of Vested Competing Associates under the February 1, 2024, Keller Williams Policies & Guidelines Manual.

64.    This Court has personal jurisdiction over defendant Keller Williams in that Keller Williams is a resident and citizen of the State of Texas and has its corporate headquarters at 1221 South Mopac Expressway, Suite 400, Austin, Texas.

65. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that a substantial part of the events that gave rise to the claims in this case occurred in this District in that Plaintiffs entered into a contract and agreement with Keller Williams to both work as an associate with Keller Williams and to operate a Keller Williams Market Center in Kansas City, Missouri, and defendant has now breached the contract with Plaintiffs to pay Profit Sharing Program distributions p

## CLASS ACTION ALLEGATIONS

66. Plaintiffs bring this class action pursuant to Rule 23, Federal Rules of Civil Procedure, individually and the following class of similarly situated persons: all persons who participate in the Keller Williams Profit Sharing Program who meet the definition of a Vested Competing Associate:

    a. A "Nationwide Class" based on claims of breach of contract, declaratory judgment, and unjust enrichment; or

    b. A "Missouri Sub-Class" based on claims of breach of contract, declaratory judgment, and unjust enrichment.

67. Excluded from each Class or Sub-Class are the judicial officers assigned to this litigation, members of their staffs, and immediate families.

68. The proposed Nationwide Class or Missouri Sub-Class meet all requirements for class certification. The Class or Sub-Class satisfy the numerosity standards. The Class or Sub-Class are believed to number in the hundreds of persons. As a result, joinder of all Class or Sub-Class Members in a single action is

impracticable. Class or Sub-Class Members may be informed of the pendency of this Class Action by, among other methods, direct, published and/or broadcast notice.

69.     There are questions of fact and law common to the Nationwide Class or Missouri Sub-Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class or Sub-Class arising from Defendants' actions include, without limitation, the following:

      a.      Whether defendant Keller Williams breached the contract with persons who meet the definition of Vested Competing Associate by changing the terms and conditions of the contractual agreement and depriving Class or Sub-Class members of payments due under the Profit Sharing Program; and/or

      b.      Whether the changes to the Profit Sharing Program enacted by the IALC, as applied to persons defined as Vested Competing Associates is a retrospective in affect and is, therefore, a breach of contract.

70.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

71.     A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members or Sub-Class Members could create a risk of inconsistent and varying

adjudications, establish incompatible standards of conduct for defendant Keller Williams, and/or substantially impair or impede the ability of Nationwide Class Members or Missouri Sub-Class Members to protect their interests.

72.     The claims of Plaintiffs are typical of the claims of members of the Nationwide Class and the Missouri Sub-Class. Upon information and belief, the Profit Sharing Program is applied and administered based upon defined criteria for participation and distributions under the Profit Sharing Program are based upon a defined set of calculations. Upon information and belief, the terms of the Profit Sharing Program were and are identical for Plaintiffs and all Nationwide Class or Missouri Sub-Class members.

73.     Plaintiffs are adequate representatives of the Nationwide Class and Missouri Sub-Class because they are members of both Classes and their interests do not conflict with the interests of the members of the Nationwide Class or Missouri Sub-Class she seeks to represent. The interests of the members of the Nationwide Class or Missouri Sub-Class will be fairly and adequately protected by the Plaintiffs and the undersigned counsel, who have extensive experience complex litigation and prosecuting complex class action litigation.

74.     Plaintiffs will adequately protect the interests of the Class or Missouri Sub-Class in that they engaged experienced counsel who are well-versed in class-action litigation.

75.     Plaintiffs seek payment all monies owed under the Profit Sharing Program for Vested Competing Associates without reduction from 100% to 5%.

76.     Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the Nationwide Class or Missouri Sub-Class who suffered harm to bring a separate action given the damages at issue compared to the costs of litigating each individual claim. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Nationwide Class Members or Missouri Sub-Class Members.

77.     Class action treatment of the claims in this action is the superior method of resolution with respect to concerns of efficiency, fairness and equity over other available methods of adjudication.

78.     Class action treatment is appropriate in this case because defendant Keller Williams is acting, or will act, in a manner generally applicable to – and often identical to – each member of the Nationwide Class or Sub-Class. Defendant will make identical reduction to payments due under the Profit Sharing Program for all Vested Competing Associates.

79.     Notice can be provided to Class Members or Sub-Class Members by use of records in possession of defendant Keller Williams and by using techniques and forms of notice similar to those customarily used in other complex class actions.

## CLAIMS FOR RELIEF

## COUNT I – BREACH OF CONTRACT

80. Plaintiffs re-allege and incorporates here all above allegations in this Complaint.

81. As described above, defendant Keller Williams offered to Plaintiff, Jerri L. Moulder and other Class Members and Sub-Class Members, the opportunity to participate in the Profit Sharing Program by, among other things, recruiting sales associates to Keller Williams Market Centers in the United States and Canada.

82. As described above, defendant Keller Williams offered to Plaintiff,s and other Class Members and Sub-Class Members, the opportunity to become vested in the Profit Sharing Program by being associated with a Keller Williams Market Center, or combination of Market Centers, for three consecutive years.

83. As described above, the Profit Sharing Program could not be terminated by defendant Keller Williams.

84. As described above, any termination or amendment to the Profit Sharing Program would be prospective only and would not affect profit sharing distributions earned prior to the effective date of the termination or amendment.

85. Plaintiffs, and other Class Members and Sub-Class Members, accepted the offer to participate in the Profit Sharing Program and to become vested in the Profit Sharing Program in the following ways:

    a. By recruiting other associates who contributed to the profitability of a Keller Williams Market Center in the United States and Canada;

    b.  By becoming permanently vested in the Profit Sharing Program through being associated with a Keller Williams Market Center, or combination of Market Centers, for three consecutive years;

86.    Defendant Keller Williams, Plaintiff, Class Members and/or Sub-Class Members received consideration for the contract and promises described above. Specifically, defendant Keller Williams received consideration in the form of the benefit of active recruitment of new associates who contributed to the profitability of a Market Center. Defendant Keller Williams also received the benefit of Plaintiffs, and Class Members or Sub-Class Members, being associated with a Keller Williams Market Center, or combination of Market Centers, for three consecutive years.

87.    Plaintiffs, and Class Members or Sub-Class Members, received consideration in the form of entitlement to future payments through the Profit Sharing Program based upon the profitability of Keller Williams associates in their Profit Sharing Program "down line."

88.    Entitlement to Profit Sharing Program distributions continued following departure from Keller Williams for Plaintiffs and other individuals with an Anniversary Date on or before April 1, 2020.

89.    Prior to August 2023, for Plaintiffs and other individuals with an Anniversary Date on or before April 1, 2020, the Profit Sharing Program did not have any limitation or restriction on competition with or against Keller Williams after departure from Keller Williams.

90.     The changes to the Profit Sharing Program enacted in August 2023, are retrospective in effect on Plaintiffs and Class Members or Sub-Class Members. Designation as a Vested Competing Associate changes Plaintiffs and Class Members or Sub-Class Members entitlement to 100% distribution of profit share from the "down line" to 5% of the profit share from the "down line."

91.     As a result of the breach of contract by defendant Keller Williams, Plaintiffs and Class Members or Sub-Class Members suffered economic damages. The damages suffered by Plaintiffs and Class Members or Sub-Class Members can be calculated with a reasonable degree of certainty in the form of payment of money owed under the Profit Share Program without reduction due to designation as a Vested Competing Associate.

92.     Plaintiffs and Class Members or Sub-Class Members also seek permanent injunctive relief to prevent defendant Keller Williams from applying any future reduction to Profit Sharing Program distributions based upon a designation as a Vested Competing Associate.

WHEREFORE, Plaintiffs pray for judgment against defendant Keller Williams for actual damages in excess of the jurisdictional limit as determined at trial, injunctive relief, for the costs of this action, attorney's fees, and for such further relief as the Court deems fair and reasonable.

## COUNT II – DECLARATORY JUDGMENT

93.     Plaintiffs re-allege and incorporates here all above allegations in this Complaint.

94.     Pursuant to 28 U.S.C. §2201 *et seq.* this court has the authority to construe, declare and determine the rights, status and legal relations under the contract in this case, including the contractual terms of the Profit Sharing Program and the applicable Keller Williams Policies & Guidelines Manuals.

95.     Pursuant to the Texas Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code §37.001 *et seq.* this court has the authority to construe, declare and determine the rights, status and legal relations under the contract in this case, including the contractual terms of the Profit Sharing Program and the applicable Keller Williams Policies & Guidelines Manuals.

96.     As set forth above, Plaintiffs and other Class Members or Sub-Class Members with an Anniversary Date on or before April 1, 2020, were vested in the Profit Sharing Program after three continuous years with a Keller Williams Market Center.

97.     As described above, after becoming vested in the Profit Sharing Program, a Keller Williams associate with an Anniversary Date on or before April 1, 2020, was not required to continue to work as an associate with a Keller Williams Market Center to remain in the Profit Sharing Program.

98.     The Profit Sharing Program and Keller Williams Policies & Guidelines Manual provided for distribution from "down line" associates of a designated sponsor for up to seven levels.

99.     The Profit Sharing Program and Keller Williams Policies & Guidelines Manual provided for varying percentages of profits from a "down line" associate, ranging from 50% to 5%.

100.    The Profit Sharing Program and Keller Williams Policies & Guidelines Manual provided that any termination or amendment to the Profit Sharing Program would be prospective only and would not affect a Market Center or a recruiting sponsor with respect to Profit-Sharing Contributions owed or profit sharing distributions earned prior to the effective date of the termination or amendment.

101.    The August 2023, amendments to the Profit Sharing Program and Keller Williams Policies & Guidelines Manual reducing Profit Sharing Program distributions from 100% to 5% for persons designated as Vested Competing Associates is retrospective in affect and violates the terms of the contractual agreement between Plaintiffs, Class Members, and Sub-Class Members and defendant Keller Williams.

Wherefore, Plaintiffs request declaratory judgment that 1) the Profit Sharing Program cannot be amended to retroactively reduce or eliminate entitlement to Profit Sharing distributions owed to vested plan participants with an Anniversary Date on or before April 1, 2020; and 2) that Keller Williams cannot reduce Profit Sharing Program distributions to persons designated as Vested Competing Associates from 100% to 5%.

## COUNT III - UNJUST ENRICHMENT

102.    In the alternative, Plaintiffs re-allege and incorporates here all above allegations in this Complaint.

103.    Keller Williams used the Profit Sharing Program to encourage the recruitment of top associates to join Keller Williams by associates at Keller Williams.

104.    As described above, the Profit Sharing Program was developed to be a way to reward those associates who built the company through recruitment of top associates to Keller Williams.

105.    As described above, the Profit Sharing Program provided that a Keller Williams associate with an Anniversary Date on or before April 1, 2020, was vested in the Profit Sharing Program after three continuous years associated with a Keller Williams Market Center or combination of Keller Williams Market Centers.

106.    As described above, the Profit Sharing Program provided that a Keller Williams associate with an Anniversary Date on or before April 1, 2020, was not required to continue to work as an associate with a Keller Williams Market Center to remain in the Profit Sharing Program.

107.    As described above, the Profit Sharing Program and Keller Williams Policies & Guidelines Manual provided that any termination or amendment to the Profit Sharing Program would be prospective only and would not affect a Market Center or a recruiting sponsor with respect to Profit-Sharing Contributions owed or profit sharing distributions earned prior to the effective date of the termination or amendment.

108. Defendant Keller Williams received valuable services from Plaintiffs and other persons designated as Vested Competing Associates. Specifically, Keller Williams received the benefit of the work of Plaintiffs and other persons designated as Vested Competing Associates to recruit sales associates to join Keller Williams.

109. Defendant Keller Williams continues to be enriched by and receive the benefit of profits generated by sales associates recruited to join Keller Williams by persons designated as Vested Competing Associates.

110. The benefit received and accepted by defendant Keller Williams was at the expense of Plaintiffs and Class Members or Sub-Class Members in that they expended time, energy and effort to recruit top sales associates to join Keller Williams.

111. Defendant Keller Williams received such valuable service and benefit under circumstances that gave reasonable notice to Keller Williams that Plaintiffs and other Class Members or Sub-Class Members would expect to be paid according to the terms of the Profit Sharing Program in which they had become vested.

112. To allow defendant Keller Williams to retain the benefit of the profits generated by sales associates recruited by Plaintiffs and Class Members or Sub-Class Members would be unjust when Keller Williams encouraged and enticed Plaintiffs and Class Members or Sub-Class Members to put forth such efforts.

WHEREFORE, Plaintiffs pray for judgment against Defendant for actual damages in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request relief and judgment against defendant Keller Williams as follows:

a.   That the Court enter an order certifying the Class, appointing Plaintiff Jerri L. Moulder, P.C. and/or Jerri L. Moulder as representative of the Nationwide Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Nationwide Class;

b.   Alternatively, that the Court enter an order certifying the Missouri Sub-Class, appointing Plaintiffs as representative of the Missouri Sub-Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Missouri Sub-Class;

c.   For a judgment against Defendant for the causes of action alleged against it;

d.   For damages in the amount of $250,000,000 or an amount to be proven at trial;

e.   For declaratory judgment that any changes to the Profit Sharing Program not be retroactively applied so as to reduce the amount of distribution owed under the Profit Sharing Program to Plaintiff and other Class Members or Sub-Class Members who are designated as, or may be designated as, Vested Competing Associates from 100% to 5%;

f.   For appropriate injunctive relief, enjoining defendant Keller Williams from taking any action to reduce the amount of distribution owed under the Profit Sharing Program to Plaintiff and other Class Members or Sub-Class Members who are designated as, or may be designated as, Vested Competing Associates from 100% to 5%;

g.   For an award of attorney's fees;

h.   For costs incurred; and

i.   For such other relief in law or equity as the Court deems just and proper.

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

_____/s/ *Justin Hill*_____

Justin Hill          State of Texas Bar No. 24057902
Gabriel Narvaez      State of Texas Bar No. 24110974
HILL LAW FIRM
445 Recoleta Road
San Antonio, TX 78216
Phone:  (210) 960-3939
Fax:  (844) 404-4455
justin@jahlawfirm.com
gabriel@jahlawfirm.com
service@jahlawfirm.com

And

Kenneth B. McClain          (*To be admitted pro hac vice*)
Jonathan M. Soper          (*To be admitted pro hac vice*)
Kevin D. Stanley          (*To be admitted pro hac vice*)
HUMPHREY, FARRINGTON & MCCLAIN, P.C.
221 West Lexington Ave., Ste. 400
Independence, MO 64051
Phone:  (816) 836-5050
Fax:  (816) 836-8966
kbm@hfmlegal.com
jms@hfmlegal.com
kds@hfmlegal.com

ATTORNEYS FOR PLAINTIFFS